IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cv-01956-DDD

RICHARD A. OVERTON,

　Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

　Defendant.

---

ORDER AFFIRMING DECISION OF
ADMINISTRATIVE LAW JUDGE

---

## I.　Background

This is an appeal of an Administrative Law Judge's (ALJ) denial of Plaintiff Richard Overton's application for Social Security Benefits based on his impairments of gout, osteoarthritis, depression, and alcohol and marijuana abuse. Mr. Overton's application has a circuitous history. Mr. Overton first applied for benefits in September 2009, alleging that his disability began 22 months before that. (AR at 546.[1]) Over the course of his case, Mr. Overton has appeared before three ALJs, who between them issued four opinions, and he has now three times appealed denial of his application to this Court. (*Id.*)

---

[1]　AR refers to the Administrative Record below, which is document 14 and its attachments.

1

The first ALJ denied Mr. Overton's application, finding that Mr. Overton had a residual functional capacity to perform light work. (*Id.* at 335.) Mr. Overton appealed, and Judge Moore reversed and remanded the case to the ALJ to articulate why on the one hand, she credited the testimony of the consultative examiner Dr. Benjamin Loveridge, but did not address Dr. Loveridge's finding that Mr. Overton's gout attacks would cause significant "manipulative restrictions" in Mr. Overton's hands. (*Id.* at 346, 358.)

On remand, the first ALJ again denied Mr. Overton's application. (AR at 661.) The ALJ determined that Mr. Overton had a limited residual functional capacity and that his impairments meant there were no jobs in the national economy he could perform. But the ALJ nevertheless again denied the application because, if Mr. Overton stopped abusing alcohol, he wouldn't be disabled within the meaning of the Social Security Act. (*Id.* at 664–69.) Mr. Overton appealed, and on the Commissioner's motion, Judge Blackburn remanded the case for a de novo review of Mr. Overton's application. (*Id.* at 681–84.) After receiving Judge Blackburn's decision, the Appeals Council assigned the matter to a new ALJ to reconsider how Mr. Overton's alcohol abuse affects his application and to reassess Mr. Overton's maximum functional capacity and his occupational base, among other things. (*Id.* at 690–92.)

The second ALJ denied Mr. Overton's application for benefits for the third time, finding that Mr. Overton had the residual functional capacity to perform "seated" light work and that jobs existed in significant numbers in the national economy that he could perform. (*Id.* at 705–11.) The Appeals Council reversed, explaining that the second ALJ failed to adequately evaluate Dr. Loveridge's opinion that the "number of hours [Mr. Overton] should be able to stand or walk during a normal 8-hour workday is 4 to 6 hours with breaks every hour." (*Id.* at 722.) The ALJ,

2

according to the Council, summarily dismissed Dr. Loveridge's determination that Mr. Overton would need breaks every hour. (*Id.*) Nor did the ALJ adequately evaluate the opinion of psychological medical expert Robert Pelc, Ph.D., who opined that Mr. Overton had mild to moderate restrictions in his ability to accomplish tasks within a schedule. (*Id.* at 722–23.) The ALJ erred because although he assigned Dr. Pelc's opinion great weight, the ALJ's residual functional capacity determination did not align with the limitations identified by Dr. Pelc. (*Id.* at 723.) The Appeals Council remanded the case to a third ALJ. (AR at 546.)

The third ALJ's decision is the decision subject to this appeal. At step one of the five-step sequential framework governing Social Security benefit applications,[2] the ALJ found that Mr. Overton has not had a job since 2009. (AR at 548.) At step two, the ALJ found that Mr. Overton suffers from gout, osteoarthritis, depression, anxiety, alcohol abuse, and cannabis abuse and that these impairments significantly limit Mr. Overton's "ability to perform basic work activities." (*Id.*) The ALJ also noted that Mr. Overton has other impairments, namely: well-controlled hypertension, cysts on his arms and hands, and holes in heart that had been treated by surgery. (*Id.* at 549.) At step three, the ALJ found that Mr. Overton's impairments did not match an established listing under the governing regulations, and so Mr. Overton was not conclusively disabled. *See* 20 C.F.R. § 404.1520(d). The ALJ considered the medical evidence and determined that Mr. Overton only had a moderate limitation in remembering and applying information, interacting with others, maintaining pace, and managing himself. (AR at 550–51.)

---

[2] *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

3

The ALJ's determination at step four that Mr. Overton retains a residual functional capacity to perform light work is the primary focus of Mr. Overton's appeal. The ALJ first evaluated Mr. Overton's symptoms and found that there was a reasonable expectation that they were caused by his impairments. (*Id.* at 553.) The ALJ recounted Mr. Overton's testimony that gout flares prevented him from retaining steady work and that his mental-health issues affect his daily activities and relationships. (*Id.* at 552.)

The ALJ concluded, however, that Mr. Overton's testimony that his symptoms were intense, persistent, and limiting was not entirely consistent with the objective medical evidence. (*Id.* at 553.) The ALJ noted that medical records confirm that Mr. Overton's gout dates to 2008. (*Id.*) In 2010, Dr. Loveridge performed a consultative exam. Mr. Overton reported a history of gouty flares from the age of 24 on. (*Id.* at 554.) Despite the flares, Mr. Overton's exam was mostly normal, and Dr. Loveridge noted that alcoholism was the likely cause of the flares. (*Id.*) He had several follow-up appointments with different medical providers in 2010. (*Id.* at 554–55.) These exams mostly showed that Mr. Overton's gout symptoms were improving. (*Id.*) In 2011, he reported several flares but maintained normal range of motion and daily activities. (*Id.* at 555.) From 2012 to 2015, medical records reflected that Mr. Overton had several flares, mostly caused by alcohol consumption. (*Id.*)

As for Mr. Overton's mental-health issues, medical records confirm that he started receiving mental-health treatment in 2010. (AR at 556.) The ALJ noted, however, that Mr. Overton's therapy sessions were intermittent from 2010 to 2013, and he entirely stopped attending therapy thereafter. (*Id.*) Evidence showed, moreover, that Mr. Overton participates in normal activities like caring for his kids, eating in restaurants,

and going to movies despite his mental health diagnoses. (*Id.*) During the relevant period, Mr. Overton struggled with substance abuse. (*Id.*)

Overall, the ALJ determined that Mr. Overton's gouty flares were at most intermittent, that his mental health was mostly stable, and that his ongoing substance abuse makes medical conditions worse. (*Id.* at 557.) The ALJ thus concluded that Mr. Overton has a residual functional capacity to perform light work. And at step five, the ALJ determined that there existed a significant number of jobs in the national economy available to someone with Mr. Overton's residual functional capacity.

The ALJ evaluated numerous medical opinions, two of which are subject to this appeal: the opinions of Drs. Loveridge and Pelc. Mr. Overton argues that the ALJ's evaluation of these opinions constituted reversible error.

## II. Standard of Review

When reviewing disability-insurance-benefit denials, district courts do not make their own assessment of the evidence, but ask only whether "substantial evidence" supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–

5

62 (10th Cir. 2005). And courts may not substitute their judgment for that of the agency. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Any fact, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

### III. Dr. Loveridge

Mr. Overton first argues that the ALJ's decision to discount Dr. Loveridge's opinion concerning hourly breaks is reversible error. Dr. Loveridge examined Mr. Overton in 2010 and offered a functional assessment of him:

> The number of hours the claimant should be able to stand or walk during a normal 8-hour workday is 4 to 6 hours **with breaks every hour**. The number of hours the claimant should be able to sit during a normal 8-hour workday is 6 to 8 hours. There are no postural limitations recommended at this time. There are no assistive devices recommended at this time. The amount of weight the claimant should be able to lift or carry at any given time is unlimited respectively. Manipulative limitations are expected with gout attacks with fingering, grasping, or pulling. There are no other relevant, visual, communicative or workplace environmental limitations recommended at this time.

(AR at 191 (emphasis added).) The ALJ considered this opinion and gave it partial weight. The ALJ explained that Dr. Loveridge's opinion concerning hourly breaks was not supported by the medical evidence, and that "Dr. Loveridge did not provide any accompanying narration to support this finding." (AR at 559.) Among other things, the ALJ noted that Mr. Overton cared for his daughter as an infant, did many activities of daily living, and had only intermittent gout flares—all of which did not support the need to take hourly breaks because the "symptoms were not constant." (*Id.*) The ALJ also found that Mr. Overton was in fact more limited in lifting and carrying than Dr. Loveridge concluded. (*Id.*) But

6

the ALJ determined that limiting Mr. Overton to light exertional duties accounted for his lifting limitations and "there is no basis to require an hourly break." (*Id.* at 559–60.)

The ALJ's decision to discount Dr. Loveridge's hourly-break opinion wasn't reversible error. When weighing medical opinions, the ALJ must consider, among other factors, the supportability of the opinion. "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion." 20 C.F.R. § 416.927(c)(3). "The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." *Id.* The ALJ must also consider whether the opinion is consistent with the record as a whole. *Id.* § 416.927(c)(4). Here, the ALJ noted that Dr. Loveridge did not present any evidence supporting Mr. Overton's need for hourly breaks. Nor did Dr. Loveridge present any other evidence supporting his opinion. The ALJ specifically noted this lack of supportability when she evaluated the hourly-break opinion. And she noted the existence of other objective medical evidence in the record that contradicted Mr. Overton's need for hourly breaks.

Mr. Overton disagrees because the ALJ lacked evidence to conclude that limiting him to light exertional duties would also alleviate the need for hourly breaks. (Doc. 17 at 5.) But that wasn't the basis for the ALJ's decision to discount Dr. Loveridge's opinion in part. The ALJ instead cited the lack of support for Dr. Loveridge's opinion and other evidence in the record. In any event, because the ALJ's broader conclusion that such breaks were not required is supported by substantial evidence in the record, the fact that the ALJ also stated that light exertional duties would also alleviate any need for breaks is irrelevant.

7

Citing *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007), and *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), Mr. Overton next argues that the ALJ improperly substituted her opinion for that of Dr. Loveridge. (Doc. 17 at 18.) But those decisions stand for a broader proposition—that an ALJ can reject a medical opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin*, 288 F.3d at 1252. And the ALJ did explicitly rely on contradictory medical evidence (namely that Mr. Overton's conditions were intermittent and generally improved as time went om) to reject Dr. Loveridge's opinion on breaks. The ALJ's weighting of Dr. Loveridge's opinion was not error.

### IV. Dr. Pelc

Mr. Overton next objects to the ALJ's consideration of Dr. Pelc's opinion. (Doc. 17 at 18.) The Appeals Council ordered the ALJ to retain a medical expert, and Dr. Pelc was selected. Dr. Pelc testified that Mr. Overton has several mild to moderate impairments. Dr. Pelc defined "mild" to mean "slightly more than minimal but satisfactory functioning." (AR at 621.) Dr. Pelc defined "moderate" to mean "less than marked . . . more than an insignificant level of impact but still functioning satisfactorily." (*Id.*) Among others, Dr. Pelc testified that Mr. Overton has moderate limitations in social functioning, and concentration, persistence, and pace. (*Id.* at 617–18.) Dr. Pelc also opined that Mr. Overton has a mild limitation in maintaining concentration and understanding simple information. (*Id.* at 621.)

Specifically at issue here are Dr. Pelc's opinions concerning schedule and breaks. Dr. Pelc opined that Mr. Overton has a moderate limitation to "perform activities within a schedule" but that he is not "precluded from doing that." (*Id.* at 621.) Dr. Pelc also opined that Mr. Overton has

a mild to moderate limitation in his "ability to complete a normal work day and work week without interruptions from psychologically based symptoms." (*Id.* at 621–22.) The ALJ gave Dr. Pelc's opinion partial weight. (*Id.* at 558.) The ALJ noted that Dr. Pelc had not reviewed the most recent evidence when he gave his opinion in an earlier hearing, and he did not account for evidence that Mr. Overton performs many activities of daily living that suggest the moderate limitations identified by are not fully supported by the record. (*Id.*)

Mr. Overton argues that the ALJ failed to consider Dr. Pelc's testimony that Mr. Overton has mild to moderate limitations in his ability to stick to a schedule and complete work without breaks and that this failure constitutes reversible error. It is true that the ALJ did not expressly reference Dr. Pelc's opinions about "schedule" and "breaks." But the ALJ did explain that she considered Dr. Pelc's opinions on "concentration persistence and pace." (*Id.* at 557.) And under the relevant regulations and forms used by the Commissioner, the category "concentration and pace" encompasses "the ability to perform activities within a schedule" and "the ability to complete a normal workday and workweek without interruptions . . . without an unreasonable number and length of rest periods." *See* Soc. Sec. Admin, Mental Residual Funct. Capacity Assessment, Form SSA-47340F4-SUP, 1–2, *available at* https://www.ssdfacts.com/forms/SSA-4734-F4-SUP.pdf; *see also* 20 C.F.R. § 404.1520a(c)(3) ("We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."); 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (noting that a claimant's ability to "concentrate, persist, or maintain pace" are one of four broad categories of criteria considered by the ALJ). So the ALJ's reference to Dr. Pelc's

9

opinions on "pace" and "concentration" encompassed Dr. Pelc's specific opinions on breaks and schedule. The ALJ did not, in other words, fail to consider a part of Dr. Pelc's opinion.

The only remaining question, then, is whether the ALJ's consideration of Dr. Pelc's opinions was reasonable. It was. The ALJ reasonably determined that Dr. Pelc's opinion deserved partial weight because he applied an earlier version of the regulations relating to mental disorders, and because the evidence in the record suggested Mr. Overton had little issue with maintaining pace and schedule in daily activities. (AR at 558.) Contrary to Mr. Overton's argument, the ALJ did not "fully discount the bulk of [Dr. Pelc's] mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not." (Doc. 17 at 21 (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291–92 (10th Cir. 2012).) The ALJ specifically explained that evidence of Mr. Overton's daily activities suggests no more than moderate mental impairments, as Dr. Pelc found. (AR at 558.) But any more severe impairments found by Dr. Pelc were contrary to the other evidence in the record cited by the ALJ. (*Id.*) The ALJ's consideration of Dr. Pelc's opinion was not reversible error.

## CONCLUSION

The decision of the ALJ is **AFFIRMED**.

DATED: May 10, 2021.    BY THE COURT:

Daniel D. Domenico
United States District Judge